IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE #: 25-CV-60517

AHRI FARACHE a/k/a AHRON FARACHE,
an individual, and
AF FLORIDA RENT, LLC,
a Florida limited liability company,

    Plaintiffs,

vs.

AMERICAN EXPRESS COMPANY,
a New York corporation, and
LINA FARACHE, an individual and
resident of the State of California,

    Defendants.

_____/

## AMENDED COMPLAINT

The Plaintiffs, AHRI FARACHE a/k/a AHRON FARACHE ("AHRON"), and AF FLORIDA RENT, LLC ("AF") (collectively, "Plaintiffs), by and through undersigned counsel, sue the Defendants, AMERICAN EXPRESS COMPANY ("AMEX"), and LINA FARACHE ("LINA") (collectively, "Defendants"), and in support thereof allege as follows:

### JURISDICTIONAL ALLEGATIONS

1.    This is an action for damages for violation of the federal Fair Credit Billing Act, 15 U.S.C. §1666 *et seq.,* and related state causes of action.

2.    The individual Plaintiff, AHRON FARACHE, maintains his primary place of residence in Broward County, Florida, and he is otherwise *sui juris*.

-1-

3. The corporate Plaintiff, AF, is a for-profit limited liability company organized and operating under the laws of the State of Florida, with its principal place of business in Broward County, Florida.

4. The corporate Defendant, AMEX, is a for-profit foreign corporation organized and operating under the laws of the State of New York, with its principal place of business in the State of New York, and which maintains offices in, and conducts business throughout, the State of Florida.

5. The individual Defendant, LINA FARACHE, maintains her primary place of residence in the State of California, and she is otherwise *sui juris*.

6. A substantial part of the events or omissions giving rise to the claims pled herein occurred in Broward County, Florida, which is within the Southern District of Florida.

7. Accordingly, federal jurisdiction is appropriate under 15 U.S.C. §1666, the Fair Credit Billing Act, and under the legal doctrine of supplemental jurisdiction, as to the related claims arising under the laws of the State of Florida. *See* **MSP Recovery, LLC v. Allstate Insurance Co.**, 835 F.3d 1351, 1362 (11th Cir. 2016) ("Additionally, where there is a basis for federal jurisdiction, the district court must exercise it supplemental jurisdiction over related state law claims unless a statutory exception applies.")

8. Further, pursuant to 28 U.S.C. §1391, venue is appropriate in the Southern District of Florida, and more specifically, in the Fort Lauderdale Division thereof, as a substantial part of the events or omissions giving rise to the claims pled herein occurred therein.

## COMMON ALLEGATIONS

9. Prior to the initiation of these proceedings, Plaintiffs had maintained credit card and other privileges with the Defendant AMEX.

10. At all times relevant hereto Plaintiffs' credit card accounts with AMEX were and are in good standing.

11. On or about January 30, 2025, Plaintiffs sent a letter to AMEX, via certified mail, which was received by AMEX on February 4, 2025.  A copy of the letter with signed return receipt is attached hereto as Exhibit "A."

12. AMEX failed to respond to said letter, which is the designated procedure for contesting charges in an AMEX account, as per the account operating agreement, which is binding on AMEX and its customers/clients.

13. As a result of AMEX' failure to respond, Plaintiffs are entitled to bring legal action against AMEX in a court of competent jurisdiction rather than having to proceed in arbitration.

14. Plaintiffs had identified suspicious and unauthorized charges starting on April 6, 2022, and continuing through June 1, 2023. A total of forty-nine (49) unauthorized transactions were identified and reported to AMEX by an through the above-noted correspondence (Exhibit "A").

15. The total amount of unauthorized transactions for which Plaintiffs incurred damages is Seventy-Nine Thousand Five Hundred Forty-Nine Dollars and Eleven Cents ($79,549.11), exclusive of court costs, attorneys's fees.

16. Well before sending the letter identified as Exhibit "A" hereto, Plaintiffs first reported such unauthorized and suspicious activity when it appeared on Plaintiffs' Synovus Bank statements on or around May 12, 2022.

17. Plaintiffs have engaged in many conversations with person in AMEX' global

fraud protection services regarding the improper transactions, however, the fraud investigation conducted by AMEX was Never handled appropriately, which resulted in Plaintiffs experiencing multiple delays and undue hurdles during that process.

18. These delays, caused solely by AMEX' inability to conduct a proper fraud investigation, prevented AMEX from providing Plaintiffs with the attention that their claims demanded, particularly in light of (1) the number of fraudulent transactions – almost 50 – and the total amount of the losses suffered by Plaintiffs – over $79,000.00.

19. From the beginning, AMEX employees/representatives investigated Plaintiffs' allegations of fraud completely misunderstood the nature of the claims: the unauthorized charges and suspicious activity did **not** stem from improper and/or fraudulent charges appearing on Plaintiffs' AMEX account, bur rather, from Plaintiffs' bank account with Synovus Bank, as that account was being charged for payment of unknown – and unauthorized – bills/payments which were being debited directly AMEX against Plaintiffs' bank account.

20. Each transaction type was described as a "pre-authorized withdrawal" with a correlating description of the AMEX ACH payment related thereto.

21. At all times relevant hereto, AMEX was and is aware that an unauthorized individual, *i.e.*, someone other than Plaintiffs, has utilized Plaintiffs' Synovus Bank Account to pay for that individual's own AMEX account charges.

22. However, despite being aware as early as May 12, 2022, of such unauthorized charges and expenses on Plaintiffs' bank account, AMEX continued to process these suspicious transactions, even after Plaintiffs' express notification and demand that it (AMEX) refrain from doing so.

23. Upon information and belief, that unauthorized user is Defendant LINA, who was

having monies deducted by AMEX from Plaintiffs' bank account to pay for her own AMEX charges without Plaintiffs' knowledge, consent or approval.

24. As the direct and proximate result of AMEX' negligence and or willful misfeasance or malfeasance, Plaintiffs continued to suffer the above-described losses from May of 2022 through June of 2023.

25. As a further result AMEX' negligence and or willful misfeasance or malfeasance, Plaintiffs were forced to file a police report with the Broward County Sheriff's Office; that police agency opened a case under Case No.: 9023060002010.

26. Plaintiffs have already made an inquiry with Synovus Bank, which was then submitted by Plaintiffs to AMEX; that inquiry indicates that AMEX has processed all of these fraudulent transactions in error, and as such, AMEX, is responsible for the Plaintiffs' damages.

27. On several occasions over the past 3 years, both in writing and orally, demand was made by Plaintiffs to AMEX for payment of their damages, in the amount of Seventy-Nine Thousand Five Hundred Forty-Nine Dollars and Eleven Cents ($79,549.11).

28. These damages are properly claimed by Plaintiffs, and owed to them by AMEX, for failing to provide adequate safeguards against fraud, and continuing to allow an unknown, unauthorized individual to pay their own AMEX charges utilizing the banking information of Plaintiffs for **more than fourteen (14) months**.

29. In order to prepare and prosecute their bona fide claims, Plaintiffs been forced to retain undersigned counsel in order to enforce their rights and have incurred attorney's fees in connection therewith, which should be paid by AMEX.

30. All conditions precedent to filing this action have been satisfied, or have otherwise been waived.

## COUNT I.  VIOLATION OF FAIR CREDIT BILLING ACT
### (AGAINST DEFENDANT AMEX)

31. .Plaintiffs reallege and reaver the jurisdictional and common allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

32. On January 30, 2025, Plaintiff AHRON sent a letter to AMEX in a "final attempt" to get them to resolve his prior complaint concerning unauthorized charges to his AMEX account.

33. AHRON detailed the history of his efforts to have AMEX comply with its obligations under the Fair Credit Billing Act ("FCBA"), to fully and fairly, and timely, investigate his complaint – and then pointed out that AMEX had failed and/or refused to do a proper investigation, and further, that had they done so, they would have adjusted his account by reversing all of the unauthorized charges as pled with greater specificity herein).

34. As the direct and proximate result of AMEX' failure or refusal to comply with its obligations under the FCBA, AHRON has been damaged, and will continue to suffer such damages.

35. Should AHRON prevail in this claim, he would be entitled, per the statute, to recover his reasonable attorney's fees and costs in bringing this claim.

## COUNT II – FRAUD
### (AGAINST DEFENDANT AMEX)

36. .Plaintiffs reallege and reaver the jurisdictional and common allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

37. Plaintiffs filed a police report under Broward Sheriff's Office Case No.: 902306002010, concerning allegations of theft and fraudulent activities being perpetrated by an unknown individual, with the assistance of AMEX, against Plaintiffs.

38.     AMEX has permitted, and actively and knowingly participated in forty-nine (49) such unauthorized transactions as described with greater specificity herein.  The full list of these unauthorized transactions, indicating the dates and amounts of each transaction, is attached hereto as Exhibit "B."

39.     AMEX was aware of the inquiry made on behalf of Plaintiffs by Synovus Bank yet failed to take reasonable steps to safeguard Plaintiffs, causing injury to them.

40.     Even after being directly notified by Plaintiffs of the ongoing unauthorized, fraudulent activity, AMEX continued to charge Plaintiffs' bank account **even after** Plaintiffs formally revoked AMEX' authorization to do so, soon or around May 12, 2022.

41.     At all times material hereto, AHRON was a senior citizen, recovering from a liver transplant. He has had medical setbacks on his difficult road to recovery and has been in and out of the hospital and under constant, regular medical care.

42.     AMEX committed error by intentionally and purposefully diverting funds from Plaintiffs' bank account to a different American Express Card member's account controlled by an unauthorized third-party individual.

43.     AMEX made representations that it was conducting an investigation into Plaintiff's reports of fraudulent activity, however, such representations were knowingly false, as AMEX was not, in fact, conducting any such investigation, as its employees/representatives never understood the core issue, the exact nature of the fraud.

44.     Plaintiffs relied, to their detriment, on AMEX' false representations that it was actively investigating the fraud, when it was not.

45.     As the direct and proximate result of AMEX' acts of fraud, Plaintiffs have suffered injury and damages, and will continue to do so in the future.

46. Eventually, in a letter to Plaintiffs dated July 20, 2023, AMEX acknowledged its error, and specifically acknowledged that payments were being incorrectly posted to another AMEX member's account and that the same card member also utilized the same bank information for prior payments, yet AMEX still failed to act to rectify its error by fully refunding to Plaintiffs the full amount of payments incorrectly debited against Plaintiffs' accounts.

47. AMEX' actions, as described herein, were willful, wanton and were done in conscious disregard of Plaintiffs' rights.

48. AMEX' lack of accountability has caused tremendous damage to Plaintiffs, who acted reasonably under the circumstances and followed the procedures given to then by AMEX to report fraudulent charges.

**COUNT III – BREACH OF FIDUCIARY DUTY**
**(AGAINST DEFENDANT AMEX)**

49. Plaintiffs reallege and reaver the jurisdictional and common allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

50. AMEX maintains and holds personal records of its card members, such as Plaintiffs, which includes information such as social security numbers and financial institution routing and account numbers.

51. As a holder of confidential information, AMEX owes a fiduciary duty of care, loyalty and good faith to its customers, including Plaintiffs.

52. AMEX' fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of its business, to discharge its actions in good faith, to act in the best interest of its customers, and to implement procedures to prevent fraudulent transactions.

53. AMEX breached its fiduciary duty of care by, among other things, permitting the

mismanagement of Plaintiffs' account, permitting the improper and unauthorized use of the Plaintiffs' account, diverting funds from the Plaintiffs' account for unauthorized pecuniary gain, and failing to comply with applicable state and federal law related thereto.

54. Plaintiffs have been, and remain, customers of Synovus Bank and maintain a bank account at that financial institution.

55. AMEX retains records of that financial institution's routing and account numbers pertaining to Plaintiffs' Synovus Bank account.

56. Plaintiffs identified suspicious and unauthorized charges starting on April 6, 2022, and continuing to June 1, 2023. *See* Exhibit "B."

57. AMEX failed to comply with its fiduciary duty to Plaintiffs that is inherent in their relationship.

58. AMEX breached its fiduciary duty of care owed to Plaintiffs by, among other things, permitting the mismanagement of Plaintiffs' account, permitting the improper and unauthorized use of Plaintiffs' accounts, and diverting funds from Plaintiffs' account at its financial institution for unauthorized payments to another American Express card member's account.

59. Plaintiffs have provided AMEX with ample opportunity to investigate the claims asserted by them and provided AMEX with all the information necessary for Defendant to correct the unauthorized, suspicious and fraudulent conduct identified by Plaintiffs.

60. AMEX failed to take the steps necessary to correct its mistakes and breach of its duty and obligations to Plaintiffs.

61. Plaintiffs have been damaged by AMEX' breach of its fiduciary duties to them.

## COUNT IV – UNJUST ENRICHMENT
## (AGAINST DEFENDANT LINA)

62. Plaintiffs reallege and reaver the jurisdictional and common allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

63. At all times material hereto, LINA maintained a credit card with AMEX.

64. Specifically, LINA maintains, NS/or had maintained, a Blue Cash Preferred credit card with AMEX, with account number ending 2-74002.

65. Upon information and belief, LINA utilized her credit card for her personal expenditures.

66. During the months of May and June 2023, Plaintiffs identified forty-nine (49) suspicious and/or unauthorized transactions that were found on Plaintiff's AF Florida Rent LLC's Synovus bank account starting on April 6, 2022, and continuing to June 1, 2023. See Exhibit "B."

67. LINA utilized Plaintiffs' bank account to remit payment on her AMEX credit card.

68. At all times material hereto, LINA had knowledge of the financial benefits conferred by utilizing the Plaintiffs' bank account for payment of her AMEX charges.

69. LINA has retained the benefit of the funds depleted from Plaintiffs' bank account.

70. LINA has not paid Plaintiffs for the value of these payments to her AMEX account.

71. It would be inequitable for LINA to retain the financial benefit conferred upon her through her fraudulent use of Plaintiffs' funds without repayment for the same.

72. Prior to filing suit against LINA, on or about August 21, 2024, a demand letter

was sent by Plaintiffs' counsel to LINA, seeking payment of the full amount of monies unlawfully taken by from Plaintiffs by LINA, however, no response was ever received to the letter, nor did LINA comply with the demand. *See* copy of letter and proof of mailing, attached hereto as Exhibit "C."

73. Shortly after this letter was received by her, LINA telephoned AHRON, and admitted that she had unlawfully (*i.e,* without his authorization, prior knowledge and/or consent) used funds in his bank account to pay her AMEX charges, and that all the subject charges were hers.

74. However, LINA did not, and has not, reimbursed AHRON for any or all of the funds she unlawfully used.

## COUNT V – FRAUD
## (AGAINST DEFENDANT LINA)

75. Plaintiffs reallege and reaver the jurisdictional and common allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

76. LINA maintains, and/or had maintained, a Blue Cash Preferred credit card with AMEX with account number ending 2-74002.

77. LINA has committed and perpetrated acts of fraud, forty-nine (49) unauthorized transactions over the span of fourteen (14) months in which an unknown customer of Defendant and Defendant have debited Plaintiffs' bank account a total of Seventy-Nine Thousand Five Hundred Forty-Nine Dollars and Eleven Cents ($79,549.11). *See* Exhibit "B."

78. LINA was aware that Plaintiffs had initiated an investigation with both AMEX, and with Synovus Bank, as well as initiating a request for reimbursement.

79. LINA continually charged Plaintiff's bank account in order to pay her own

AMEX charges, even though she know such charges were unauthorized and constituted acts of fraud.

80. LINA committed fraud by intentionally and purposefully diverting funds from Plaintiffs' bank account as described herein.

81. LINA's actions as described herein as willful, wanton and in conscious disregard of the Plaintiffs' rights.

82. LINA's acts of fraud caused Plaintiffs to suffer damages.

83. Prior to filing suit against LINA, on or about August 21, 2024, a demand letter was sent by Plaintiffs' counsel to LINA, seeking payment of the full amount of monies unlawfully taken by from Plaintiffs by LINA, however, no response was ever received to the letter, nor did LINA comply with the demand. *See* Exhibit "C."

84. Shortly after this letter was received by her, LINA telephoned AHRON, and admitted that she had unlawfully (*i.e,* without his authorization, prior knowledge and/or consent) used funds in his bank account to pay her AMEX charges, and that all the subject charges were hers.

85. However, LINA did not, and has not, reimbursed AHRON for any or all of the funds she unlawfully used.

### COUNT VI – CONVERSION
### (AGAINST DEFENDANT LINA)

86. Plaintiffs reallege and reaver the jurisdictional and common allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

87. LINA intentionally and purposefully diverted funds from Plaintiffs' bank account as described herein and converted those funds for her personal benefit to her AMEX account.

88. LINA committed these acts of diversion and conversion without Plaintiffs' knowledge or consent.

89. Moreover, LINA committed these acts of diversion and conversion while AHRON was seriously ill.

90. LINA's actions, as described herein, were willful, wanton and in conscious disregard of Plaintiffs' rights.

91. The total amount of funds converted by LINA was Seventy-Nine Thousand Five Hundred Forty-Nine Dollars and Eleven Cents ($79,549.11).

92. LINA acted with felonious intent to obtain said funds without Plaintiffs' knowledge or consent, and without reimbursing Plaintiffs for same.

93. LINA's actions were without right or justification and constituted the conversion of Plaintiffs' property.

94. LINA acted maliciously and in bad faith in that she knew or should have known that her actions were wrongful.

95. Prior to filing suit against LINA, on or about August 21, 2024, a demand letter was sent by Plaintiffs' counsel to LINA, seeking payment of the full amount of monies unlawfully taken by from Plaintiffs by LINA, however, no response was ever received to the letter, nor did LINA comply with the demand. *See* Exhibit "C."

96. Shortly after this letter was received by her, LINA telephoned AHRON, and admitted that she had unlawfully (*i.e,* without his authorization, prior knowledge and/or consent) used funds in his bank account to pay her AMEX charges, and that all the subject charges were hers.

97. However, LINA did not, and has not, reimbursed AHRON for any or all of the

funds she unlawfully used.

**COUNT VII – VIOLATION OF §501.202(2)**
**(FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**
**(AGAINST DEFENDANT AMEX)**

98. Plaintiffs reallege and reaver the jurisdictional and common allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

99. The purpose of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") pursuant to Fla. Stat. §501.202(2) is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

100. Additionally, the purpose of FDUTPA is to make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

101.. For purposes of FDUTPA, the individual Plaintiff AHRON is considered a senior citizen.

102. Plaintiffs consistently reported the suspicious and allegedly fraudulent activity to AMEX in a timely and expeditious manner.

103. However, AMEX has refused to take accountability even after acknowledging that funds were improperly taken from Plaintiff's bank account and posted/credited to the account of an AMEX card holder other than Plaintiffs.

104. AMEX' unconscionable acts and practices in this case at bar offend established public policy in addition to state and federal law relating to consumer protection.

105. AMEX' unconscionable acts and practices of continuing to allow, after notice to it of fraud and/or suspicious activity as described herein, has resulted in damages to be suffered by Plaintiffs in the amount of $79,549.11.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs AHRI FARACHE a/k/a AHRON FARACHE and AF FLORIDA RENT, LLC pray for relief as follows:

    A.    That Final Judgment be entered against Defendant AMERICAN EXPRESS COMPANY as to all counts pled against it;

    B.    That Final Judgment be entered against Defendant LINA FARACHE as to all counts pled against her;

    C.    That this Honorable Court also make a specific finding that acts of Defendants, as alleged herein, and of which they are adjudicated, constitute deceptive and unfair trade practices, in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA");

    D.    That this Honorable Court further enjoin Defendants, both jointly and severally, from committing further violations of FDUTPA;

    E.    That this Honorable Court enter an award of compensatory damages and taxable costs in favor of Plaintiffs and against Defendants;

    F.    That this Honorable Court enter an award of reasonable attorney's fees in favor of Plaintiffs and against Defendants; and

    G.    Award any such further relief, in law or equity, as this Honorable Court deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury for all issues so triable.

DATED:   May 2, 2025.

                              Respectfully submitted,

                              ANDREW M. KASSIER, P.A.
                              Attorneys for Plaintiffs
                              4500 Lejeune Road
                              Coral Gables, Florida   33146
                              (786)-942-5460 tel
                              (786)-551-1944 fax
                              kassiera@aol.com  e-mail

BY:   *s/Andrew M. Kassier, Esq.*
           ANDREW M. KASSIER, ESQ.
           (Fla. Bar No. 316547)